IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | Chapter 11 |
| GROSSMAN'S INC., *et al.*, | Case No. 97-00695 (PJW) |
| | Case No. 97-00696 (PJW) |
| Debtors. | Case No. 97-00697 (PJW) |
| JELD-WEN, INC., f/k/a Grossman's Inc., | |
| Plaintiff, | |
| | Adv. Pro. No. 07-51602 |
| v. | |
| MARY VAN BRUNT and GORDON VAN BRUNT, | **Re: Adv. Dkt. Nos. 49 and 50** |
| Defendants. | |

## NOTICE OF APPEAL

JELD-WEN, inc. hereby appeals, under 28 U.S.C. § 158(a) and pursuant to Rules 8001 and 8002 of the Federal Rules of Bankruptcy Procedure, to the United States District Court for the District of Delaware from the *Findings of Fact and Conclusions of Law* and *Judgment Order* (the "Order"), entered by the United States Bankruptcy Court for the District of Delaware (Hon. Peter J. Walsh) on June 9, 2008 [Adv. Docket Nos. 49 and 50].

The names of the parties to the Order appealed from, and the names, addresses, and telephone numbers of their respective attorneys, are each as follows:

**APPELLANT**

- **JELD-WEN, inc.**

    DUANE MORRIS LLP
    Frederick B. Rosner (DE 3995)
    1100 North Market Street, Suite 1200
    Wilmington, DE 19801
    Telephone:   (302) 657-4900
    Facsimile:   (302) 657-4901
    E-mail:      FBRosner@duanemorris.com

    FOSTER PEPPER, PLLC
    Christopher M. Alston (WA 18823)
    1111 Third Ave., #3400
    Seattle, WA 98101
    Telephone:   (206) 447-4400
    Facsimile:   (206) 447-9700
    E-mail:      alstc@foster.com

**APPELLEES**

- **MARY VAN BRUNT and GORDAN VAN BRUNT**

    THE HOGAN FIRM
    Daniel K. Hogan (DE 2814)
    1311 Delaware Ave.
    Wilmington, DE 19806
    Telephone:   (302) 656-7540
    Facsimile:   (302) 656-7599
    E-mail:      dkhogan@dkhogan.com

    -and-

    STUTZMAN, BROMERG, ESSERMAN & PLIFKA,
     A Professional Corporation
    Sander L. Esserman (TX 06671500)
    Cliff I. Taylor (TX 24042007)
    2323 Bryan St., #2200
    Dallas, TX 75201
    Telephone:   (214) 969-4900
                 (214) 969-4999
    E-mail:      esserman@sbep-law.com
                 taylor@sbep-law.com

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

Dated: June 16, 2008
      Wilmington, Delaware

Respectfully,

_____
Frederick B. Rosner (DE 3995)
DUANE MORRIS LLP
1100 North Market Street, Suite 1200
Wilmington, DE 19801
Telephone:   (302) 657-4900
Facsimile:    (302) 657-4901
E-mail:       FBRosner@duanemorris.com

*Counsel to Plaintiff/Appellant*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE GROSSMAN'S, INC., et al., | ) Chapter 11 |
| | ) |
| Debtors. | ) Case No.  97-00695(PJW) |
| _____ | )              97-00696(PJW) |
| | )              97-00697(PJW) |
| JELD-WEN, INC., f/k/a | ) |
| Grossman's Inc., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Adv. Proc. No. 07-51602 |
| | ) |
| MARY VAN BRUNT and GORDAN | ) |
| VAN BRUNT, | ) |
| | ) |
| Defendants. | ) |

# FINDINGS OF FACT AND CONCLUSIONS OF LAW

### INTRODUCTION

Plaintiff JELD-WEN, inc. ("JELD-WEN") is successor-in-interest to Grossman's Inc., GRS Holding Company, Inc. and GRS Realty Company, Inc., as reorganized debtors (collectively, "Grossman's").

This Court confirmed Grossman's chapter 11 plan of reorganization (the "Plan") in December 1997.  Pursuant to the Plan and the order confirming it, all claims against Grossman's were discharged.  Through the Plan JELD-WEN acquired all of the stock of and subsequently merged with Grossman's.  Almost ten years later, in May 2007, Defendants Mary and Gordan Van Brunt (the "Van Brunts") sued JELD-WEN and many other defendants in a New York state court for injuries allegedly due to exposure to products and

2

materials containing asbestos.  Specifically, the Van Brunts contend that Mary Van Brunt suffered from exposure to products containing asbestos which allegedly were acquired from a Grossman's store in 1977 (the "State Court Claims").  Since the events which give rise to the alleged injuries occurred decades before Grossman's Chapter 11 case, JELD-WEN contends the State Court Claims were discharged by the confirmed Plan.

In June 2007, JELD-WEN commenced this adversary proceeding with its Complaint for (1) permanent injunction enjoining defendants' prosecution of claims against JELD-WEN, inc., (2) determination that defendants' claims have been discharged, and (3) award of damages.  The Complaint seeks declaratory and injunctive relief permanently enjoining the Van Brunts from prosecuting the State Court Claims.  (Adv. Doc. # 1.[1])  JELD-WEN also seeks an award of damages for the Van Brunts' prosecution of the State Court Claims.  The Van Brunts filed their answer to the Complaint on July 27, 2007, contending the State Court Claims were not discharged, and denying all liability. (Adv. Doc. # 4.)

A pretrial order was entered on March 13, 2008.  The Court conducted a brief evidentiary hearing on March 26, 2008. Counsel for the parties read deposition testimonies into the record in lieu of live testimonies.

---

[1] Items from the docket in this adversary proceeding are identified as "Adv. Doc. # ___".  Items from the chapter case are identifed as "Doc. # ___".

3

The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. To the extent any of the following findings of fact are determined to be conclusions of law, they are adopted, and shall be construed and deemed, conclusions of law. To the extent any of the following conclusions of law are determined to be findings of fact, they are adopted, and shall be construed and deemed, as findings of fact.

**FINDINGS OF FACT**

**Undisputed Facts**.

The following facts are not disputed or have been agreed to or stipulated by the parties in the pretrial order:

1. Grossman's was a retailer of lumber, building materials and other home improvement products, and operated 43 stores in seven states under the names "Contractors' Warehouse," "Mr. 2nd's Bargain Outlet," and "Grossman's Bargain Outlet."

2. Grossman's filed for protection under chapter 11 of the Bankruptcy Code on April 7, 1997.

3. This Court fixed August 4, 1997 as the deadline for filing proofs of claim (the "Claims Bar Date"). Notice of the Claims Bar Date was published in newspapers in major cities, including New York City, Dallas and Boston.

4. The Plan was confirmed by an order of this Court on December 9, 1997 (the "Confirmation Order").

4

5. A final report was filed and this Court entered an order closing the chapter 11 cases on June 20, 2001.

6. The Plan purports to discharge all debts and claims that arose before the effective date of the Plan.

7. The Plan provides that this Court retains jurisdiction over, among other things, the classification of claims of any creditor and to determine issues and disputes concerning the Confirmation Order or the Plan.

8. The Plan does not contain a channeling injunction authorized by 11 U.S.C. § 524(g). Indeed, it could not contain such an injunction. The use of a § 524(g) channeling injunction is limited to cases involving companies that have actually been sued for damages related to asbestos prior to the date of the bankruptcy petition. E.g., In re Eagle Picture Industries, Inc., 203 B.R. 256 (Bankr. S.D. Ohio 1996). There is no indication in the record before me that there were any asbestos related claims pending against Grossman's at the time it filed its petition.

9. During the chapter case, there was no appointment of a representative to receive notice on behalf of or to represent the interests of future asbestos claimants.

10. At the time of the chapter case, Grossman's was not aware of any product liability lawsuits based upon alleged exposure to asbestos-containing products that had been filed against Grossman's prior to their bankruptcy.

5

11. At the time of the chapter case, Grossman's knew of the adverse health risks associated with exposure to asbestos.

12. At the time of the chapter case, Grossman's had actual knowledge that it had previously sold asbestos containing products such as gypsum board and joint compound.

13. At the time of the chapter case, Grossman's was aware that asbestos manufacturers had been or were being sued by asbestos personal-injury claimants.

14. At the time of the chapter case, Grossman's was aware that producers of both gypsum board and joint compound were being sued for asbestos-related injuries.

15. In the State Court Claims the Van Brunts have asserted claims based upon alleged contact with products acquired from Grossman's which allegedly contained asbestos.

16. Mary Van Brunt was exposed to products that the Van Brunts claim contained asbestos, which Mary Van Brunt acquired from a Grossman's store in upstate New York during a home remodeling project in 1977.

17. The Van Brunts named approximately 57 other defendants in the lawsuit who allegedly caused Mary Van Brunt to be exposed to products containing asbestos and/or are responsible in some way for their injuries. These other defendants include the manufacturers whom the Van Brunts allege manufactured the products which Mary Van Brunt acquired from Grossman's in 1977.

6

18. Mary and Gordan Van Brunts' claims were unknown to them or to Grossman's at the time the Plan was confirmed.

19. Publication notice of Grossman's bankruptcy case and the Claims Bar Date did not indicate that Grossman's might have future asbestos liability.

20. Neither Mary Van Brunt nor Gordan Van Brunt filed a proof of claim in Grossman's chapter case prior to the confirmation of the Plan.

21. In March 2007 Mary Van Brunt was diagnosed with mesothelioma, a disease that can be caused by exposure to asbestos. Mary Van Brunt did not manifest symptoms of mesothelioma until late 2006.

22. JELD-WEN moved to reopen the chapter case to have this Court determine that claims such as those asserted by the Van Brunts were discharged by the Plan. On June 12, 2007, this Court entered an Order reopening this case. The Complaint was filed thereafter.

**Mary Van Brunt's Exposure to Grossman's Asbestos-Containing Products**.

23. Mary Van Brunt believes she was exposed to asbestos-containing products acquired from Grossman's in 1977 for remodeling

7

projects at her home on Reist Street in Williamsville, New York. (Tr. at 12:19-25 and 15:10-19.)[2]

24. Mary Van Brunt does not know either the name or manufacturer of any of the products acquired from Grossman's for her remodeling projects in 1977. (Tr. at 15:10-19, 21:24-22:5, 26:6-16.)

## CONCLUSIONS OF LAW

**Jurisdiction and Venue**.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, Rule 7004 of the Federal Rules of Bankruptcy Procedure, and Article 12.2(1), (3), (5), (10), (12), (14), (15) and (19) of the Plan (Doc. # 495), and Paragraph 14 of the Confirmation Order (Doc. # 813.) This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and (L). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are §§ 105, 524, 1141 of chapter 11 of Title 11 of the United States Code, Bankruptcy Rule 7065, and Fed. R. Civ. P. 65, and 28 U.S.C. § 2201.

It is not the function of this Court to weigh the merits of the Van Brunts' State Court Claims. The sole function here is for this Court to determine whether the State Court Claims are

---

[2] "Tr. at ___" refers to the transcript of the March 26, 2008 trial.

8

claims that arose prior to the effective date of the Plan and therefore barred from assertion at this time.

**The Van Brunts did not have a "claim" that was discharged by the Confirmation Order**.

1.  JELD-WEN asserts that the Van Brunts' State Court Claims are enjoined by the Confirmation Order entered in Grossman's chapter case.  Specifically, JELD-WEN relies on the injunctive provision of the Confirmation Order that bars the assertion of **"claims and interests arising prior to the Effective Date."**  Thus, this Court must determine if the Van Brunts' State Court Claims arose before or after the effective date of Grossman's Plan.

2.  It has long been the law in this circuit that a bankruptcy court must look to state law to determine when a claim or interest arises.  <u>In re Frenville Co., Inc.</u>, 744 F.2d 332 (3d Cir. 1984); <u>Schweitzer v. Consolidated Rail Corp.</u>, 758 F.2d 936, 943 (3d Cir. 1985).  As the Third Circuit held in <u>Frenville</u>, the "threshold question of when a right to payment arises, absent overriding federal law, 'is to be determined by reference to state law.'" <u>Frenville</u>, 744 F.2d at 337 (quoting in part <u>Vanston Bondholders Protective Comm. v. Green</u>, 329 U.S. 156, 161 (1946)).

3.  The Van Brunts brought their State Court Claims in a New York state court and the parties do not dispute that New York state law governs these claims.  Under New York state law, asbestos personal injury causes of action, such as those held by the Van

9

Brunts, do not arise until an injury manifests itself. See, e.g., Rothstein v. Tenn. Gas Pipeline Co., 204 A.D.2d 39, 45 (N.Y. App. Div. 1994)("we hold that the decedent's personal injury causes of action accrued on the date his injury was discovered or should have been discovered"); Imiola v. Erie-Lackawanna R.R. Co., 45 Mis.2d 502, 503 (N.Y. Sup. Ct. 1965). "[W]hen the nature of the injury is such that it does not manifest itself immediately, the determination of when the cause of action accrued does not depend on when the injury was inflicted," but "the cause of action accrues at such time as the victim has reason to know he has been injured and the wrongful act which caused it." Imiola, 45 Mis.2d at 503. Thus, under New York law, the Van Brunts' claims did not arise until Mary Van Brunt discovered her asbestos related disease. Mary Van Brunt had no symptomatic manifestations of her asbestos-related disease until the Fall of 2006 and she was not diagnosed with mesothelioma until March of 2007 - almost ten years after Grossman's Plan was confirmed. Therefore, under New York state law, the Van Brunts' claims did not arise until well after the effective date of Grossman's Plan.

4.  JELD-WEN argues that the vast majority of courts conclude that to determine when a claim arose, the focus should be on the time when the acts giving rise to the claim were performed. JELD-WEN asserts that all the acts giving rise to the State Court Claims occurred well before Grossman's filed its bankruptcy case and were

thus discharged pursuant to the terms of the Plan. All of the numerous cases cited by JELD-WEN are outside the Third Circuit. As to Frenville, JELD-WEN claims that "Frenville is one of the 'most criticized and least followed precedence' decided under the Bankruptcy Code. In re Firearms Imp. and Exp. Corp., 131 B.R. 1009, 1015 (Bankr. S.D. Fla. 1991)" (Adv. Doc. # 47, p. 8.) Thus, according to JELD-WEN, "the analysis set forth in Frenville is seriously flawed and should not be followed." (Adv. Doc. # 47, p. 12.) Of course, I cannot ignore the holding in Frenville. In Jones v. Chemetron Corp., 212 F.3d 199, 206 (3d Cir. 2000), the Third Circuit acknowledged that there was significant authority to the contrary in other circuits, but reaffirmed that Frenville is the law in this circuit.

> Although significant authority supporting this proposition exists in other circuits, this circuit has held the reverse. In Matter of M. Frenville Co., Inc., 744 F.2d 332 (3d Cir. 1984), cert. denied, 469 U.S. 1160, 105 S. Ct. 911, 83 L.Ed.2d 925 (1985), this court held that in most circumstances a "claim" arises for bankruptcy purposes at the same time the underlying state law cause of action accrues. Id. at 337. We are cognizant of the criticism the Frenville decision has engendered, but it remains the law of this circuit.

Id. at 205-06.

    5. Less than a year after the Frenville decision, the Third Circuit addressed the issue of when an asbestos claim arises under the Federal Employers' Liability Act ("FELA") in Schweitzer v. Consol. Rail Corp., 758 F.2d 936 (3d Cir. 1985). In Schweitzer,

11

plaintiffs were exposed to asbestos during their employment with the Reading Railroad and the Central Railroad of New Jersey.  Later, but before plaintiffs' injuries manifested themselves, these railroads consummated a reorganization.  When plaintiffs discovered their injuries, they filed FELA actions against Conrail, which had succeeded to the former railroads' rail assets.  Conrail argued that the consummation order discharged any claims asserted by the injured workers, but the Third Circuit disagreed, noting first "that plaintiffs' rights only could have been affected by the discharge of all 'claims' against their employer if they had 'claims' within the meaning of section 77 prior to the consummation date of their employer's reorganization."  Id. at 941.  The Third Circuit then concluded that "if plaintiffs had causes of action that existed under FELA prior to the relevant consummation dates they had 'claims.'"  Id.  However, after analyzing the plaintiffs' claims, the Court concluded that no cause of action accrued until the manifestation of the plaintiffs' injuries.  Id. at 942.  In doing so, the Third Circuit explained why the holding urged here by JELD-WEN does not make sense:

> We believe, however, that subclinical injury resulting from exposure to asbestos is insufficient to constitute the actual loss or damage to a plaintiff's interest required to sustain a cause of action under generally applicable principles of tort law.
>
> Moreover, we are persuaded that a contrary rule would be undesirable as applied in the asbestos-related tort context.  If mere

>    exposure to asbestos were sufficient to give
>    rise to a F.E.L.A. cause of action, countless
>    seemingly healthy railroad workers, workers who
>    might never manifest injury, would have tort
>    claims cognizable in federal court. It is
>    obvious that proof of damages in such cases
>    would be highly speculative, likely resulting
>    in windfalls for those who never take ill and
>    insufficient compensation for those who do.
>    Requiring manifest injury as a necessary
>    element of an asbestos-related tort action
>    avoids these problems and best serves the
>    underlying purpose of tort law: the
>    compensation of victims who have suffered.
>    Therefore we hold that, as a matter of federal
>    law, F.E.L.A. actions for asbestos-related
>    injury do not exist before manifestation of
>    injury.

Id. at 942.

The Schweitzer court went on to observe:

>    Thus, in [debtor's] view, a person who had no
>    inkling that years in the future he would be
>    killed by a product produced by the debtor
>    would be required to file a claim in the
>    debtor's section 77 bankruptcy proceedings so
>    as to preserve any rights that he might have in
>    a future tort suit. One court has already
>    described such a procedure as "absurd."
>    Gladding Corp. v. Forbes (In re Gladding
>    Corp.), 20 B.R. 566, 568 (Bankr. D. Mass.
>    1982). We agree. It would be nearly as absurd
>    under our facts to have expected plaintiffs,
>    who allegedly had manifested no injury at the
>    time of the reorganization proceedings, to file
>    claims for such injury in those proceedings.

Id. at 943.

6.   Thus, under Schweitzer, "actions for asbestos-related injury do not exist before manifestation of injury" as a matter of federal tort law.   Id. at 942.   Consequently, even under the proposed "overriding federal law" exception alluded to in Frenville,

13

the Van Brunts' claims are not barred by the Confirmation Order because Mary Van Brunt's injuries did not manifest themselves until almost a decade after the effective date of Grossman's Plan.

    7. The Third Circuit's analyses in <u>Schweitzer</u> and <u>Frenville</u>, as well as applicable New York state law, dictate that the Van Brunts' asbestos claims did not arise until Mary Van Brunt had symptomatic manifestations of her asbestos injury. Because Mary Van Brunt did not manifest her injuries until years after the Grossman's Plan was confirmed, this Court concludes that the Confirmation Order, which only purports to enjoin claims arising prior the effective date of Grossman's Plan, does not bar the Van Brunts' State Court Claims against JELD-WEN.

### CONCLUSION

    For the reasons set forth above, I will grant judgment in favor of the Defendants in this adversary proceeding.


Dated: June 9, 2008



                              Peter J. Walsh
                              United States Bankruptcy Judge

**SERVICE LIST**

Frederick B. Rosner
Duane Morris LLP
1100 North Market Street, Suite 1200
Wilmington, DE 19801

Christopher M. Alston
Foster Pepper PLLC
1111 Third Avenue, Suite 3400
Seattle, WA 98101-3299

Counsel to Plaintiff JELD-WEN, inc.

Daniel K. Hogan
The Hogan Firm
1311 Delaware Avenue
Wilmington, DE 19806

Sander L. Esserman
Cliff I. Taylor
Stutzman, Bromberg, Esserman & Plifka, P.C.
2323 Bryan Street, Suite 2200
Dallas, TX 75201

Counsel for the Defendants Mary Van Brunt and Gordan Van Brunt

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

## APPEAL TRANSMITTAL SHEET

Case Number: __07-51602__   ○ BK   ● AP
If AP, related BK Case Number: __97-00695-97__

Order Appealed: __Judgment Order for Findings of Fact and Conclusions of Law__
Docket Number: __49__   Date Filed: __06/09/2008__

Item Transmitted:   ● Notice of Appeal   ○ Motion for Leave to Appeal
Docket Number: __06/16/2008__   Date Filed: _____

*Appellant: __Jeld-Wen, Inc., f/k/a/ Grossman's__   *Appellee: __Mary Van Brunt and Gordon Van__

Counsel for Appellant:
  Frederick B. Rosner
  DUANE MORRIS LLP
  1100 N. Market Street, Suite 1200
  Wilmington, DE 19801

Counsel for Appellee:
  Daniel K. Hogan
  THE HOGAN FIRM
  1311 Delaware Ave.
  Wilmington, DE 19806

*If additional room is needed, please attach a separate sheet.*

Filing Fee paid?   ● Yes   ○ No

IFP Motion Filed by Appellant?   ○ Yes   ● No

Hard Copies of Designated Items Received?   ● Yes   ○ No

Have Additional Appeals to the Same Order been Filed?   ○ Yes   ● No
  If so, has District Court assigned a Civil Action Number?   ○ Yes   ○ No   Civil Action # _____

__07/9/2008__   By: __Violetta I. Blanco__
Date                  Deputy Clerk

Bankruptcy Court Appeal Number: __08-42__
6/1/06

FOR USE BY U.S. BANKRUPTCY COURT